rise. Your Honorable fellow court for the second judicial district is now hoping please be seated. Your Honor, the first case in the docket one. Are both of you ready to proceed? When you're ready. Good morning. May it please the court counsel. My name is Christina law Merriman from the Office of the State Appellant Defender on behalf of the appellant Kevin Christor. There are three issues before the court today, but I'd like to focus on the second issue, the constitutional issue this morning. Kevin's probation was revoked for saying no for declining to hand over his cell phone to a surveillance officer, even though that officer had no reason to believe that he had done anything wrong. Isn't that the point of a condition of probation, though? Of this specific condition? Any condition. That Kevin was to hand over his cell phone. No, he was to comply with the conditions of probation. Yes, he was to comply. However, our position is that this constitutional this probation condition was unconstitutional, and thus this court should reverse the trial for its revocation as it was based solely on a violation of an unconstitutional probation condition. And why is it unconstitutional? It's unconstitutional because it's unreasonable. As the Illinois Supreme Court explained in In Re J.W., when a probation condition limits a probationer's constitutional rights, the overriding concern is whether the condition is reasonable. To be reasonable, a probation condition cannot be overly broad when viewed in the light of the desired probation goal. When assessing whether a condition is reasonable and thus constitutional, courts are to look at three factors. One of those factors is whether the public interest in imposing the probation condition manifestly outweighs the impairment to the probationer's constitutional right. Here, the public interest was preventing recidivism and promoting rehabilitation. How about, didn't he have a victim in this case? I mean, an individual he was supposed to stay away from, have no contact with? That's correct. So didn't the restrictions on his probation achieve the goal of ensuring that he wasn't contacting this victim? It certainly was related to another condition, but it was not related to the offense itself. And the third factor that courts are to consider when determining if a condition is reasonable is whether there were alternative means to achieving the probation goal. And I believe Your Honor's suggestion is that the goal here was ensuring that Kevin did not contact the complaining witness. That's correct. I apologize, Justice Justin. No, I'm sorry. Thank you. So, but there was Facebook contact, at least indirectly, with the victim as it relates to the unlawful restraint which he was on probation for, right? Correct. And wouldn't it be reasonable then to say, I know they don't know this when he pleads, but, well, one of the things we can monitor to make sure that there's no contact compliance is looking at the defendant's cell phone. Why is that unreasonable? So I think, Your Honor, it was quite right for noting that what the relevant facts that are critical to determining the reasonable of this condition is what the court knew when it imposed the condition. And I understand the court's concern with being able to search Kevin's cell phone if there is any suspicion that the, that Kevin was contacting the complaining witness. And what the court told us, what the Supreme Court told us in In Re J.W. is when determining if a condition is reasonable, when a condition impacts the defendant's constitutional rights, one of those factors is whether there was alternative means. And in this case, there were alternative means to achieving the goals that Your Honor is indicating. What would those be? That would be to require reasonable suspicion before allowing the probation officer to search Kevin's phone. Doesn't the defendant give up some liberty rights, some rights when he or she enters into a probation agreement? Certainly. The Supreme Court has recognized that probationers do have a diminished, have diminished privacy interests. That's correct. So how do you distinguish Asher? For several reasons. I believe that Asher is not controlling. First and foremost, that case did not involve the search of a cell phone. And the Supreme Court, the United States Supreme Court has made clear in Riley that cell phones implicate privacy concerns far greater than that of searches of the home, which was the case in Asher. It was the search of a home. Additionally, in that case, the probation officer did have reasonable suspicion to search the defendant's home as it was suspected that the defendant there was possibly using drugs or had drugs in his home as he reported to probation and appeared to be under no influence. Additionally, Asher was decided before Riley. And the court did not have the benefit of Riley in reaching its conclusion or predicting future searches or different types of searches. So you're saying Asher didn't have the benefit of Riley. Is that what you're saying? It didn't. And really, the case involved the search of a home. And what the Supreme Court has told us is that searches of cell phones are different. Of course, Riley was an arrest, right? It wasn't a probation or parole case. That's correct, but it still involved the Fourth Amendment and really deeply analyzed an individual's privacy concerns when it comes to cell phones and how it differs from a home search, including the amount of information, the character of information, explaining how a cell phone has the GPS location information where you could track a person's movements and reconstruct a person's movements minute to minute, how the immense storage capacity of cell phones because of, you know, modern cell phones have these great storage capacities and the increased use of cloud storage. Really, the amount of information on a person's cell phone is practically limitless. And the Court noted that there could be millions of photos and videos and documents, even data that is contained in this tiny little modern cell phone that makes it far greater of a privacy invasion than the search of a person's home or a search of someone's pocket. Is there any relationship between the reasonableness, as you see it, and the fact that this was a fully negotiated plea? Is that relevant? I think it is relevant, and the Supreme Court explained it in Knights, where that was a case that involved a probation search condition as well. And the Court explained that the probationer's consent or acceptance of a probation condition is one factor of many that courts need to consider whether a search is constitutional. And so it certainly is relevant, and the fact that Kevin was on probation is relevant, but it does not foreclose this Court from finding that this suspicionless cell phone search condition was unconstitutional. You know, all the things that you mentioned about the extent of the privacy issues with respect to a cell phone, doesn't that also make the cell phone the most useful tool  and the ease with which he could do that with a cell phone? I mean, doesn't that cut both ways? Certainly, a cell phone could be used to make contact with a person. Obviously, it's a phone, and they could call someone. Probably the easiest method to make contact. It's the Internet, Facebook, telephone, texting. It's certainly a method. However, I think when determining if this condition was reasonable, I think it's critical that this Court consider whether there were alternative means. The Court could have imposed a condition where it required a reasonable suspicion, and it still would have allowed the probation officer to search Kevin's phone. For example, if the probation officer had received any kind of information that Kevin was contacting the complaining witness, then the officer would certainly have a reasonable suspicion. But if we impose a suspicion, then what's the level of suspicion? Again, given under the rubric that this is a defendant on probation, arguing over a condition to which he agreed. So what's the level of suspicion? The level of suspicion that would be required. Is it probable cause? The Supreme Court explained in Knights that it has upheld search conditions and searches similar to these where there has been a reasonable suspicion. And that's the test that we put forth today as something that would have made this condition reasonable under the Fourth Amendment. What about the fact that he's on sex offender probation? Not just probation, sex offender probation. And that's a whole different rubric in terms of the level of monitoring. In sex offender probation, and I think this is consistent throughout the state, they're looking at the computers. They're looking at anything that has access to the Internet. And it's not a reasonable suspicion approach. It's a monitoring to make sure that there isn't continued violations. Are you saying that that's basically unconstitutional to have that practice? Well, First Your Honor, that practice has been upheld by this Court and others, specifically in Thornburg. The sex offender case. Yes, that was the sex offender case. Isn't this the sex offender probation case? Tevin was pled guilty to unlawful restraint. I know, but he's on sex offender probation, isn't he? Technically, he was just on regular felony probation and he was not subject to those statutory monitoring requirements that sex offenders are required to. This was a court-ordered, non-statutory search provision. And unlike in Thornburg, which was a case where the defendant was on sex offender probation, statutorily was required to submit to suspicionless searches of his computer. But even then, the Court found that that condition was unreasonable even though he was convicted of a sex offence and even though it was statutory because there was no evidence in that case that the offence involved the use of the Internet as the victim was a member of his home  So Mr. Krister was required to do sex offender counseling but was not on sex offender probation? Correct. That's correct. Right, but, you know, when you look at the charges and this was a negotiated disposition, the charges that are dismissed often color the terms of the negotiated disposition. What's important here is what the trial court knew when it imposed this condition. Right, but it knew about the charges. It knew about the factual basis for the charges. Read the indictment. The factual basis for the plea did not include any allegations. Not the plea. It's what the court knew, not just what it was told the morning of the plea. But there was, yes, but there was no admission to any of those counts and the State dismissed those charges and we don't know for what reason because But we might put two and two together and assume that that was the reason for these conditions of probation. Well, there was no indication by the Court. The Court had imposed all the standard conditions of felony probation in Lake County and there was no particular finding by the Court that this suspicionless cell phone requirement was needed for a specific reason. And that's precisely why we're asking this Court to find that it was unreasonable because it was not reasonably related to the offense. If the Court had made that finding, would that change your posture? If the Court had explicitly found a basis as to why this specific condition was reasonable under these specific facts, given the facts of the case and Tevin's history, then possibly. But that's not the case before the Court today. How about the sentencing? You argued that the sentencing is excessive. Specifically, you were saying the Court never addressed the original charge. She never addressed the original charge? The Court only made a passing reference to the offense that it was sentencing Tevin for. And when it did, the Court even misstated the actual offense, stating that it was sentencing Tevin for manufacturing cannabis when, in fact, he had pled guilty to possession of cannabis with intent to deliver. And that was the only discussion of that case in which it imposed an eight-and-a-half-year sentence, four-and-a-half years over the minimum sentence. And thus, the Court did not properly sentence Tevin to the original offense, and instead focused on his conduct on probation and his conduct pending resentencing. Now, I'd like to go back to the Constitution issue just briefly, because there is a similar case that has been decided by the Ninth Circuit in U.S. v. Lara, which really, the Court was presented with a very close case to this one, factually. And there, the Court found that even though the defendant had pled guilty and agreed to a suspicionless search condition, it still found that the defendant there, as a probationer, had a sufficiently substantial privacy interest as to make the search of his cell phone unconstitutional. The Court relied on Riley there, indicating that cell phones were different and created increased privacy concerns, that even though the defendant had pled guilty, agreed to the condition, had actually initialed his name next to a probation condition that said Fourth Amendment waiver, the Court still found that the defendant did not waive all of his constitutional, all of his Fourth Amendment rights, and still found that the suspicionless cell phone search in that case was unreasonable. Would it be more reasonable for the Court to impose a condition that the defendant on this type of probation not have a cell phone at all? Well, first of all, that's not the issue before the Court. But you're, if the object is alternative means, what if the Court were to say you can't have a cell phone at all, and then simply encountering the defendant in the presence of a cell phone gives you probable cause? I think that that obviously presents a different issue with a different privacy, different constitutional concerns. But it's a question of alternative means. That's what I'm asking you about. Yes, and when the Court, when courts are to, when a probation condition limits a person's constitutional rights, courts are not to impose a condition that's overly broad. And so, for example, in a case like People v. Morger where the defendant there was banned completely, go ahead, okay, completely from accessing social networking sites, the Court found that that ban, that complete ban was too broad, not narrowly tailored, and that the defendant in that case should be able to still use social networking sites for positive uses, just like a cell phone can be used for positive uses in today's modern times where cell phones are critical for whether it be contacting employers, coordinating treatment for a variety of things that would have been positive for Kevin's rehabilitation. So I think a condition like that would also present similar concerns, but obviously different ones because we're talking about Fourth Amendment searches in this case, so it's a little bit different, but obviously there are positive uses for cell phones and that would be harmful to Kevin as well. Any further questions, Justice Breyer? I do not, thank you. You will have an opportunity for a reply. Thank you. Good morning, Your Honors. My name is Dave Friedland, State Appellate Defender's, Prosecutor's Office. Good morning, Counsel. I may have pleased the Court. I'm sure I'll be spoken to about that. I believe Your Honors hit the nail on the head here. This is a fully negotiated plea, and pretty much all of the other cases where the conditions or searches or probations resulted in searches that were imposed as conditions of probation by the Court or following a trial. This, certainly, no one is, the State concedes that the Fourth Amendment is implicated in the search of a cell phone as it is in houses, as it is a seizure, the defendant's contracting to go to jail. So how do you justify the Court's imposition of these restrictions on the use of the cell phone or the search of the use of the cell phone in this particular case when there was not a charge that the defendant pled guilty to with respect to sex offense or anything to that extent that would allow a cell phone search? He agreed to it. Say the defendant is charged with driving under the influence of alcohol, felonies placed on felony probation, and one of the conditions is you're allowed to search your cell phone. Would that be a valid condition for DUI case? Number one, if you said placed on, if this is an agreement, absolutely. If this defendant agrees to have his cell phone searched, then... When the defendant's entering the plea, and I think Justice Shostak will excuse me for interrupting your question, if the defendant pleads guilty, fully negotiated in open court, the defendant has no clue about the conditions of probation. So, is he really agreeing to suspend all his Fourth Amendment rights vis-a-vis his telephone in Justice Shostak's DUI case? I'd like to address it, but I do want to point to this case, because in this case he was. In this case, on the date of the plea, the state said that part of this plea agreement is that he will complete all the standard conditions of probation. Now, you're concerned that the defendant blows up their pleads guilty not knowing what those conditions are. Okay. But in this case, the defendant signed a condition, signed all the standard conditions of probation, and the judge signed all the conditions of probation which were therefore part and parcel on the plea on the date of the plea agreement. This is not a case where the defendant shows up at the probation office and is then informed of all the things that he's, that he has to do and that he didn't know. Arguably, in this case, can you arguably say that this condition was reasonably related to what he pled guilty to or part of the plea? Absolutely. In this case, you've got, as Your Honor's pointed out, this is an unlawful restraint case. There's a victim who presumably and clearly wants to have no contact with the defendant. Yes, there were charges that were dismissed that involved the actual conduct. But certainly, and the probation officer himself at the probation violation hearing testified, I want to search the cell phone to make sure that he's not having any contact with the victim. And the defendant's argument in this case that it's not reasonably related to his offense is undercut by his own actions as Justice Brennan pointed out, that he did contact the victim multiple times. There's simply no other way to monitor the defendant. There's no question that the defendant used an electronic device, smartphone, computer, tablet, that are spelled out in these conditions, specifically in the conditions of probation, to contact, to access social media, Facebook, contact the victim. Therefore, this defendant's specific claim that has applied to him that there was no reasonable relation to the offense itself is completely undercut by his own actions. So that's how you would rebut her reliance on Laura? I would rebut that reliance in Ricardo P. Laura, which dealt with the suspicion that the court found that there was no reasonable suspicion of the probation condition to search the cell phone, I would distinguish as follows. In Laura, first of all, the defendant is contending that the entire search term, the search condition itself, is unreasonable and it's unconstitutional. Laura did not hold that. Laura could have held that but did not. In Laura, which is distinguishable because the court acknowledged that probationers have diminished expectations of privacy, the issue in Laura was that the condition itself did not specifically set forth that a cell phone was something that the defendant was reasonably going to be able to have searched. He didn't know. Further, Laura, additionally, not only that he didn't know that the cell phone was going to be searched but I apologize, I lost my train of thought but that's how I would distinguish. There is no reasonable relation to searching a cell phone in the offense in Laura, correct? I couldn't, I can't, I'm unprepared to answer that but I would also note that in Laura, Laura was a trial. Laura was not a negotiated plea and I think that all of the analysis has to come back here to Absher and the principles of contract law that the defendant can waive and can contract out of Fourth Amendment rights. And that's what he did here. He certainly had a charge that was amended from a Class X felony to a Class I and several other serious criminal sexual assault charges that were dismissed through an unlawful restraint. He got a benefit of the bargain. The defendant is now seeking to get out from under the benefit of his bargain by arguing that the condition that he explicitly agreed to and again, didn't go to probation and learned about later, explicitly agreed to his signature, the trial court's signature, he's trying to get out from under that. He never moved, furthermore Your Honor, he never moved to amend or challenge the conditions of probation. This defendant knows how to challenge the conditions of probation because he did so on multiple occasions. He asked the court to modify his probation, his periodic imprisonment which was excessive. When you talk about the benefit that the state received here, he was sentenced to 36 months of periodic imprisonment. That is a substantial amount of periodic imprisonment. He had multiple public counseling and public service obligations. And so the defendant himself asked the court to modify his terms of periodic imprisonment. He did so. They held a hearing. The court did so. He asked the court to modify his condition of work release so that he could take care of his daughter. The court did so. Never once does this defendant challenge the condition that he agreed to that the cell phone search unduly burdened him or was an unconstitutional part of his sentence. Does it matter whether the defendant had agreed to a prior search of his phone? Does it matter whether he agreed to a prior search of his phone? Wasn't there a prior encounter with his probation officer where he had acquiesced to a search? And another time where he said he didn't have his phone? Prior to this violation it's clear from the record that the defendant never had his phone searched. He had a phone Didn't one time he have a phone search and he said it was his brother's and there was barely anything on it? Yes, and that was after the court had already found and revoked his probation. The court determined or ordered him, it's explicit in the court order, that he was to turn over the phone that he had been using. He did turn over a phone to the probation department. Probation has testified he was using multiple numbers. Again, undercutting all of his arguments that a phone is not something necessary to monitor important to monitor his compliance with the conditions of probation. This defendant was playing games with the phones. That's clear. So is it the state's position that if it's a fully negotiated plea under this contract analysis we never look to reasonableness? Well, I think you could look to reasonableness in certain circumstances. If the probation showed up every single morning at his house and said I'm here to search your phone again, I'm here to search your phone again there could be certain situations where the defendant could argue that something is unreasonable. But again if yes, if he agreed to it he agreed to it. And if they do want to submit to his search and do that every day I would be standing here answering and as I am, yes, he agreed to it. And then my other question along those lines is this. So this is an unusual circumstance at least in my experience where all these conditions of probation are being discussed on the record in open court before the plea. Would your answer be the same if it was the more typical situation where the defendant goes down to probation and learns of all these conditions after the quote unquote fully negotiated plea? I would have the same position. I would say that if he didn't understand or he learned something that he can move to either withdraw his plea or say I didn't know that that was one of the conditions. He might have it in effect in his assistance of counsel claim. He might he can certainly bring that to the court's attention. So my position would be yes. It's the same? Yes. My argument is the same. He pled guilty, it was a negotiated plea, yes, he can. With facts here, just make it stronger. Yes, with facts here. Let's talk about the sentencing. Did the court punish the defendant for the probation violations or did the court punish the defendant on the actual sentence? Where in the record is it clear that the court punished the defendant for the original charge in which he pled guilty? Well, the sentence is within the statutory range. The court had indicated as the court students presumed that it specifically stated and considered the evidence in aggravation and mitigation and weighed and balanced all the statutory factors at arriving at the complete sentence. Right, but did the court at any time indicate that she was sentencing the defendant to the charge in which he pled guilty or was she sentencing him, punishing him for his violations while on probation achieved? She hearkened a lot on the violations of probation. She kind of set out everything he did and even seemed a little angry of his obstinance in turning over that cell phone. How do we know she sentenced him with respect to the original charge and not the violations of probation? Well, certainly the court did acknowledge that the defendant had a history and performance on probation and all of that the court indicated that it was taking into consideration on as far as the potential for rehabilitation. The state during its argument had pointed out what the class of the offenses were. The court indicated that it considered the arguments presented by the state in aggravation and mitigation. It's in the absence of any showing that the court did not consider the offense, the court referenced the offense as the sentence within the statutory range. Did she reference the correct offense or did she misspeak? I believe that what counsel, if you're referring to the fact that the court called it manufacturing of cannabis instead of unlawful possession of intent to deliver, I don't think that that justifies or in any way defeats or calls into question the reasonableness of the trial court's sentence. Manufactured delivery is one of the common parts of titles of the offense. The court had the class of the offense right, the classes of the offenses right. The court had the names and natures of the offenses right. It was clear that the court sentence in this case was within its discretion. Briefly, with my remaining time, I just turn to the defendant's initial argument that the defendant did not actually violate the probation condition. I would point your honors to the fact that here it was clear that the defendant knew he was in violation of probation. He said, go ahead and violate me. It's clear that he knew that Officer Hrdlicka was a probation officer as Hrdlicka had been to his house, had asked him to do stuff and that he submitted to the initial search of his physical person when Officer Hrdlicka was there. Defendant's contention here now at this time that he did not know that he was required to submit to Officer Hrdlicka is contradicted, one, by the explicit statements in the case and two, the trial court made a credibility defining his subsequent claim at the PCR hearing after he had been violated. The court made a credibility determination that it did not believe the defendant's story, that it found the officer more credible. What about the fact that he reached out to his probation officer and said, hey, the surveillance officer wanted to search my phone, but I'm willing to give it to you, I don't want to give it to him. Doesn't that to some extent support his argument that he was viewing the probation officer in the traditional sense as the person he had his obligation to and not necessarily the surveillance officer? Well, he made that call, but the court is not inclined or is required to believe what he said. I'm asking you, does it not seem somewhat reasonable? No, I don't think that's reasonable. He's avoiding the reasonableness of the search that he agreed to, is to provide immediate access and to consent to a search of his person and his property, including cell phones that specifically selled out there. It, again, undercuts his own credibility by refusing to agree to those conditions, leave the area, and then call his probation officer. There's no evidence in the record that he actually submitted or came in and gave the phone. If the probationers are allowed to submit the phones on their own time or when they want to, the monitoring capabilities of probationers are significantly diminished and it becomes useless. Now that that's my time,  affirm the finding of the PTR of the probation violation and defendant's sentence. Judge Springer, any other questions? I do not, thank you. I have one question. I hate to keep going back to the issue of the sentencing, but the appellate defenders relied on a case out of this court called Varghese and in that case we reversed the conviction or we reversed the trial court for improperly co-meaning the probation conduct with the original offense because we said that the court only made a passing comment or reference to the defendant's original charge. How is this case any different than that? I think in this case the court's reliance on the conduct on probation was specifically geared to his rehabilitative potential and that's how the court analyzed and why it continued to focus on the rehabilitative potential in his conduct on probation. The court had noted that this defendant had essentially been on probation since 2007 in some form or another and yes, it spent a good deal of time focusing on that, but it just went to show that the defendant had zero rehabilitative potential left when it arrived at its lengthy sentence  Thank you, Your Honor. Thank you. Do you wish to reply? I'd first like to respond to the State's argument regarding the constitutional issue, the second issue. Can you pull the mic down a little bit? Oh, sure. Is that better? Maybe step a little closer. With respect to the fact that Kevin pled guilty and accepted this condition does not mean that he waived  pointed out, does not mean that this court does not need to be held accountable and does not need to assess the reasonableness of that condition as it limits his constitutional rights and that's what was required. Additionally, I want to clarify that Lara did involve a plea. The fruits of the probation search were used in a separate case and there was a suppression motion in that case and a stipulated bench trial there but with respect to the case he was on probation for, he was on probation for a drug offense and he had pled guilty to that case and had signed a waiver that said waiver of Fourth Amendment rights in that case and even then the Ninth Circuit found that the defendant there still had substantial privacy rights even in light of the fact of him being a probation officer and even though he had waived his rights in his probation order. But in this case he pled, the case that the court resentenced him in was a Class I, correct? Correct. And he was sentenced within the range of that Class I offense, correct? That's correct. And so we have to look and see if the court abused the discretion in that sentencing in order to determine whether or not that sentence was excessive. How do we find that there was an abuse of discretion? With respect to sentencing, I think well, first, Your Honor, was right on about Varghese and this Court's decision there where the Court, when resentencing a defendant after revocation, the Court must sentence the defendant for the original offense and a passing remark is insufficient to show that the Court did that and in Varghese the Court explained that we have to look at what the trial court said, what the comments were and in this case, it's clear that the trial judge really focused on Tevin's performance on probation and then after probation was revoked and again, the only time the Court referenced this cannabis case was when it incorrectly stated that it was sentencing him for manufacturing of cannabis and that is simply insufficient to show that the Court sentenced him for the original offense and we asked the Court to do precisely what the Court did in Varghese and either reduce that sentence or vacate and remand for a new sentencing. So regardless of whether or not the Court was within the minimum maximum or the abuse of discretion, you're saying that's not relevant. What's relevant is that she never got to the original offense. Correct. In Varghese the case also was within the range. There was no assertion that it wasn't and there's no assertion here that it wasn't. Simply that the Court did not properly sentence Tevin for the original offense. All probation violation issues are not equal. In this case, one of the probation violations was contacting the victim. That's certainly something that the Court can consider in resentencing. It's a probation violation but it goes to the heart of one of the charges. There's nothing improper about considering that, is there? That actually was not a violation. Tevin was never found in violation of probation. But that was brought to the Court's attention. It was certainly brought to the Court's attention at the resentencing hearing. And it could be considered as part of the fashion of the sentence, correct? It could have been considered certainly. But I think the difference here and what's explained in Varghese is it's not that the Court can't consider the defendant's conduct. It can consider the defendant's conduct when it comes to rehabilitation. And the likelihood of compliance with probation. Correct. I think that goes hand-in-hand. However, what Varghese held is that while that's relevant, what's most relevant is the original offense and the Court can't commingle the violation conduct or subsequent conduct on probation and the original offense, that it must clearly be sentencing the defendant to the original offense, and that's not what happened here. And so that's really what's the problem. We're not saying was it improper for the Court to consider his behavior on probation, because that's certainly a relevant factor. It's what the Court failed to do is the issue here when it comes to the sentence. Now, again, I keep going back to the second issue, but there's just one more argument I'd like to address. The State's position that this condition was reasonably related to the offense because Tevin was ordered to have no contact with the complaining witness. To make clear, that means it's reasonably related to another probation condition, not the offense itself. As he said, didn't your client receive the benefit of the bargain? He negotiated this sentence, so okay, we're going to find him guilty on this, and then we'll dismiss these other cases. Even dismissing the other cases is the Court or the prosecutor improper in asking for conditions on those other matters that were dismissed. How is that incorrect? It sounds like my time is out. So, in Laura, the Ninth Circuit actually addressed that argument head-on and said that there are limits on what the government can extract from a defendant in exchange for probation. And what's very clear from Illinois Supreme Court law and NRAJW, that when a probation condition limits a person's constitutional rights, it can't be overbroad. And so when those when there's a condition that impacts a constitutional right, it must be it can't be overbroad and must be reasonable in order for it to comply with the Constitution. And because this condition did implicate Tevin's Fourth Amendment rights and there were alternative means to achieving the very same goals if the Court had just imposed a reasonable suspicion requirement then, in this case, under these set of facts, this condition was unreasonable. How about if he pled guilty to that case? To? Unlawful restraint. He did plead guilty to unlawful restraint. So, okay, so that's, okay, I misspoke. So that the fact that So how about if he pled guilty to a sex charge? I think we would be in a different situation obviously, different facts and different privacy concerns and different probation goals to consider in those cases. Why? How? How is it any different? If we're talking about a different case where there may be different circumstances of offense and I don't know if in this hypothetical situation there's the use of a cell phone in that case but in this case there wasn't. You're saying there has to be the use of a cell phone in order to restrict cell phone use? I think the use of a cell phone would make a condition like this more reasonable. In addition, I think this Court has found that in monitoring sex offenders where they use a cell phone to find victims that, like in Morger or, no, not in Thornburg, that it's more reasonable. Were he called the victim on the cell phone and left messages or called and bothered her? That never happened in this case and again, if the Court hadn't closed it could. I mean, that's a way to monitor, right? And as explained the fact that there's alternative means to achieve that same goal, I understand the Court's desire to be able to search Tevin's phone if there is contact and that is a very legitimate concern but because we're dealing with a constitutional right, it needs to be narrowly tailored and it can't be over-broadened, so if the Court had just imposed reasonable suspicion requirement to this condition, then the probation officer still could search Tevin's phone. The problem here is that this condition did not require any level of suspicion and it allowed the probation officer to search Tevin's phone at any time without any reason and that condition is unconstitutional and because Tevin was a non-constitutional provision we asked the Court to reverse the revocation. Let me ask you this if we accept your arguments is the takeaway from this case to the state don't accept a negotiated plea go to trial on the larger charges then you don't have to worry about constitutional or non-constitutional conditions of probation is that the takeaway? How else can the state absolutely protect a victim from contact? Isn't that their obligation? Well, first of all, after trial the Court could still impose the term of probation and we could still be in the same situation here so I think... It could have but that would be a different scenario. My question to you is what's the takeaway from this case if we say these conditions are over-broad? The takeaway in this case and as what Inouye J.W. tells us is the analysis of probation conditions like this one is individualized and so this Court really just needs to decide if the condition was reasonable under these set of facts in Tevin's situation, convicted of the offense that he's convicted of here and so the Court does not need to go that far Again, you keep focusing on the convicted of but so you're saying we cannot look at the total context here. We cannot look at what he was charged with We cannot look at protection of a victim here because he wasn't specifically convicted of that offense even though he was charged with a substantially broader basis of charges. I'll put it that way Your Honor, I hope it's clear it's still a legitimate probation goal to prevent contact with the complainant. However, there were alternative means and when it's because of what... You keep coming back to there must be suspicion. That's precisely the opposite of being on probation where you give up your right to require suspicion I think the Supreme Court made it clear in its Fourth Amendment cases that although a probationer has diminished privacy rights it does not give up all of its privacy rights and as it explained in Riley searches of cell phones are different and present increased privacy interests and so when analyzing and weighing the competing interests here, we need to find that there are heightened concerns even though he did have a diminished capacity and it's precisely that analysis that we're asking the Court to do but to find that in this context because it is a suspicionless search of a cell phone the State's interest did not manifestly outweigh Tevin's and there were alternative means to achieve the very same goal that Your Honors are considering. Isn't that somewhat ironic that one of the takeaways from your position arguably is that there's more suspicion or cause required to search a phone than it is to search a house when you're on probation and yet the only thing mentioned in the Fourth Amendment well let's say cell phones are not mentioned but houses specifically are Riley was a pre Riley was a probable cause, it was an arrest situation so if I'm I guess let me rephrase my question because it's very convoluted. It seems to me that it would be under your analysis it would be harder for a probation surveillance officer to search a cell phone than it would be a probationer's house. That's correct and that's precisely what the Court held in Riley and it explicitly Riley's not a probation case It's not but one of the factors that this Court has to consider is the competing interest. I don't think the U.S. Supreme Court would agree that on an arrest situation there's less probable cause needed to search a house than a cell phone I don't think they would say they just pointed out in Riley   properties and I don't think they would agree that cell phones are unique to our lives but I don't think that houses have diminished expectations of privacy Well in Riley the Court explained how cell phones were different than houses and it got to how there's immense storage capacity of cell phones and there's physical limits in a home and how a person doesn't walk around with every document that's ever been relevant to their lives in their pockets or keep it in their home whereas a cell phone it's potentially limitless with cloud storage of all the information that could be in a phone with applications, you could have medical information evidence of intimate relationships Which is not at issue here None of those concerns are at issue here What was searched was his attempt to make contact with others not his medical records or his photographs What at issue was when the court, what's important is why the court imposed the condition and not really what happened after the fact is irrelevant to the constitutional issue. It kind of just plays out an example and Tevin actually gave a reason as to why he didn't want to share his phone because of personal and intimate information but really when the court imposed the condition, the court did have to think about the implications of that condition and potential future searches of a cell phone and what the violation of Tevin's constitutional rights would be in imposing that condition so the breadth of information described in Riley was certainly relevant and the court should have considered that when imposing the condition because it was not a condition that was limited in really any way and so it was important.